The Honorable Larry Mitchell State Representative P.O. Box 81 Bryant, AR 72022-0081
Dear Representative Mitchell:
This is in response to your request for an opinion on several questions pertaining to the Woodland Hills Water Association ("Association"). Your questions will be restated and answered in the order posed.
 1. Is the Woodland Hills Water Association a non-profit corporation?
The Circuit Court Order attached to your request indicates that the Association was formed as a non-profit corporation.[1]
It appears, therefore, that the answer to this question is "yes." It should be noted, however, that the particular facts and circumstances surrounding the operation of the Association may affect this determination.
 2. Can the manager, who is also the registered agent, draw a salary?
It appears that the answer to this question is, generally, "yes." There is no statutory prohibition against the manager's receipt of a salary. It should also be noted that an Arkansas non-profit corporation may pay compensation to its members, directors or officers for services rendered. A.C.A. § 4-28-215(a). As to the manager serving as registered agent, the Arkansas Nonprofit Corporation Act (A.C.A. § 4-28-201 et seq.) contains no prohibition in this regard.
 3. Can the manager run the Association without a Board of Directors?
The number of directors constituting the board of directors of a nonprofit corporation cannot be less than three. A.C.A. §4-28-211(b). It thus appears that there must be a board of directors for the Association. The directors may delegate such authority as they deem necessary to an officer, or agent or manager who is not an officer. See generally Arkansas Val.Feed Mills, Inc. v. Fox DeLuxe Foods, Inc., 171 F.Supp. 145
(D.C. Ark. 1959). However, ultimate responsibility for management of the corporation rests with the board of directors. Id.
 4. Can the Association require Water District #5 and Water District #6 to pay for any expenses for additional equipment and facilities if the existing facility becomes inadequate?
This question requires an interpretation of agreements entered between the parties. All of the particular facts and circumstances surrounding the agreements must be considered, in an effort to determine the parties' intent. These matters are not properly within the scope of an Attorney General Opinion. This office cannot address matters essentially involving the construction and application of contracts between private individuals and/or entities. I am precluded, under Act §25-16-701, from engaging in the private practice of law.
5. a) Can the Association's money be put into another company that is owned by the manager?
 b) Should salaries for Association employees be paid out of this company account?
 c) Should the manager use this company to construct a water tank at a cost of $80,000.00 using money loaned to the Association from one of his savings accounts?
These questions also involve a factual inquiry into the Association's operations, and the extent and nature of the manager's authority. The general manager of a corporation ordinarily has general charge, direction and control of the affairs of the corporation for the carrying on of which it was incorporated. 19 C.J.S. Corporations § 471 (1990); 18B Am.Jur.2d Corporations § 1540 (1985). His powers are similar to those of the officers of the corporation. Id. It has been stated that the manager's implied powers are ordinarily coextensive with the general scope of the business of the corporation. Id. As noted above, however, ultimate control rests with the board of directors. It should be noted that the manager's authority may derive from the bylaws, a resolution of the board of directors, or other written authorization. 18B Am.Jur.2d Corporations § 1523 (1985).
As a general matter, it is clear that directors, officers, and agents must promote the interests of the corporation to the exclusion of their own self-interest. 19 C.J.S. Corporations § 510 (1990). They are not, however, absolutely prohibited from dealing in all transactions in which the corporation may have an interest. Id. Rather, the misuse of the position is what is prohibited. Id. Any transaction between the manager and the corporation will be closely scrutinized. 19 C.J.S. Corporations
§ 507 (1991); see also generally Horne Brothers, Inc. v.Ray Lewis Corp., 292 Ark. 477, 731 S.W.2d 190 (1987). To be binding, the transaction must generally be beneficial to the interests of the corporation, or at least must not be detrimental to it. Any agreement must have been entered in good faith, and must be fair to the corporation. Id. The rule of "ratification" must also be noted in this regard. The Arkansas Supreme Court has stated that "[a]s a general rule if a corporation with knowledge of its agent's unauthorized act received and enjoys the benefits thereof, it impliedly ratifies the unauthorized act if it is one capable of ratification by parol." Co-op. Stores Co. v. MariannaHotel Co., 128 Ark. 196, 193 S.W. 529 (1917) (citation omitted).
I lack sufficient information to determine which, if any, of the above principles apply in response to your questions. In any event, however, a factual determination is required. The foregoing will, however, hopefully offer quidance in addressing the matter.
 6. As the Association is being run now, is it being run according to State law?
It should be initially noted that this office lacks the resources necessary in order to act as a factfinder in assessing the legality of all of the Association's operations. With regard generally to the arrangement reflected in the Special Master's report, however, I will note that the operation of a water association as a private supplier of water in Arkansas is not contrary to law. While the concerns set forth in the Master's report that was attached to your request perhaps merit consideration by the legislature, I am aware of no state law currently prohibiting the arrangement reflected therein.[2]
This particular arrangement has apparently been the subject of extensive review in the Saline County Chancery Court. See
Saline County Chancery Court Case No. E-87-742. Pleadings recently filed in that case indicate that while a settlement agreement was reached, the court has been asked to make further determinations regarding the Association's operations. Any factual questions regarding the manner in which the Association is being run are appropriately addressed in that judicial forum.
The foregoing opinion, which I hereby approve, was prepared by Deputy Attorney General Elisabeth A. Walker.
Sincerely,
WINSTON BRYANT Attorney General
WB:cyh
[1] For purposes of this opinion, I assume, although it has no case number, that this Order was in fact entered, and that Woodland Hills Water Association, Inc. is the same entity as "Woodlawn Hills Water Association, Inc." Material attached to your request includes a Certificate of Amendment filed with the Secretary of State on July 23, 1989, reflecting the name change.
[2] There may be some question of fact as to whether the Association would be subject to regulation by the Arkansas Public Service Commission ("APSC"). The definition of a "public utility" under A.C.A. § 23-1-101(4) (Cum. Supp. 1991) excludes property owners' associations whose facilities are enjoyed only by association members or residents and entities whose annual operating revenues would cause them to be classified as Class C or lower water companies pursuant to the uniform system of accounts. (Under current APSC Rules of Practice Procedure (May 3, 1990), Rule 9.02, a Class C Water Company is one that receives annual operating revenues of $150,000.00 or less.) The term does, however, include water companies which petition, or a majority of whose metered customers petition, the APSC to come under its jurisdiction, provided the company had combined annual operating revenues over $400,000.00 for three years immediately preceding the petition filing.